# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

PHILIP INKEL ET AL,

     Plaintiffs,

     v.

STATE OF CONNECTICUT ET AL,

     Defendants.

No. 3:17cv1400 (MPS)

## RULING

     Philip Inkel and George Corey (jointly, "the Plaintiffs") filed the operative complaint on

September 26, 2018, alleging a series of claims against a long list of defendants.[1] ECF No. 24.

---

[1] Federal Rule of Civil Procedure 10(a) states that the "title of the complaint must name all the parties." The initial complaint in this case listed the State of Connecticut, Governor Dannel Malloy, the United States of America, and President Donald Trump in the caption. ECF No. 1. The September 26, 2018 amended complaint did not include a caption, but listed the following individuals as defendants in the body of the document: Attorney General George Jepsen, the Head of the Connecticut State Police, Office of Public Safety, the Commissioner of the Department of Corrections, the Commissioner of the Department of Social Services, Chief State's Attorney Kevin Kane, the Head of the Court Operations Division of the Connecticut Judicial Branch, the "Chief governing authorities of Town of East Haddam, Selectman Mark Walters, Chief governing authorities of Town of Haddam, Chief governing authorities of Town of Colchester," the Commanding Officer of Connecticut State Police Troop K, the Commanding Officer of Connecticut State Police Troop F, Patricia Williams, George Crouch, Connecticut State Police Trooper Michael Hassett, four Connecticut State Police Troopers referred to as John Doe, Attorney Sharon Peters, Connecticut State Police Trooper Patrick Hawes, Connecticut State Trooper Supervisor John Doe, Supervisory Assistant State's Attorney Peter A. McShane, Supervisory Assistant State's Attorney Barbara Hoffman, the Honorable David P. Gold, Assistant Attorney General Robert B. Fiske III, Attorney Michael F. Dowley, Attorney Katherine Rule, Judge Joan Margolis, Court Reporter Irma Sanchez Farnham, Court Reporter Kiersten Tielhard, Laura Falzrano, Attorney John Williams, Assistant State's Attorney Dean Hannafin, Supervisory State's Attorney at New Haven John Doe, two additional Connecticut State

The State of Connecticut and all Connecticut defendants (collectively, "State Defendants") filed a motion to dismiss on November 5, 2018. ECF No. 28. The United States and President Donald Trump (together, "Federal Defendants") filed a motion to dismiss on November 6, 2018. ECF No. 30. For the reasons set forth below, the motions to dismiss, ECF Nos. 28 & 30, are GRANTED. In addition, for the reasons set forth below, all claims against the private defendants and any other defendants who have not appeared or moved to dismiss are also dismissed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.").

On January 4, 2019, Mr. Inkel filed a second amended complaint, a "supplement to complaint," and a "supplement to amended complaint." ECF Nos. 40, 43 & 44. The State Defendants filed a motion to strike the amended complaint, ECF No. 46, and a motion to strike the supplements, ECF No. 45. For the reasons set forth below, the motions to strike, ECF Nos. 45 & 46, are GRANTED.

The Plaintiffs also filed an omnibus motion regarding a host of issues, ECF No. 20, a motion for a hearing and preliminary restraining order, ECF No. 26, a motion for a hearing regarding change of venue, ECF No. 39, a motion for clarification regarding the order transferring the case, ECF No. 42, and a motion to appoint counsel, ECF No. 49. For the reasons set forth below, these motions, ECF Nos. 20, 26, 39, 42 & 49, are DENIED.

---

Troopers John Doe, Meredith Labella Inkel, Janet Labella, Warden of the Hartford Correctional Center, Attorney John Durham, and Attorney John Hughes. ECF No. 24. The Plaintiffs state that "[a]ll governmental agents are sued in their individual, official, administrative and authoritative capacities." ECF No. 24 at 5. Although the amended complaint did not name all the added parties in the caption as required by Rule 10(a), I treat all of these individuals as defendants in this action in light of the Plaintiffs' pro se status.

## I.    Facts

The initial complaint was filed on August 17, 2017 and alleges that the Plaintiffs were denied equal protection of the laws, access to courts, and the ability to "live free and raise a family." ECF No. 1 at 2. It contains no specific factual allegations but includes a request to enjoin Dannel Malloy and Donald Trump from taking various actions. ECF No. 1. It states that "this complaint is not complete and will be continued." *Id.* at 4. Mr. Inkel and Mr. Corey then filed an amended complaint on September 26, 2018. ECF No. 24. The amended complaint alleges the following facts:

In May 1993, Mr. Inkel witnessed two Colchester Police Officers punch and choke a teenager in a McDonalds. ECF No. 24 at ¶ C. He reported this incident in June 1993. *Id.* at ¶ D. In retaliation, police officers forcibly entered his home on July 3, 1993, and threatened his family. *Id.* at ¶¶ E-H. Law enforcement filed false reports to cover up their illegal conduct and continued to harass, threaten, and arrest Mr. Inkel. *Id.* at ¶¶ I, P. In August 1993, Melody Wolf conspired with law enforcement to punish Mr. Inkel and was rewarded with custody of their children. *Id.* at ¶¶ M-O. Based on advice from Attorney Richard Gifford, Mr. Inkel began investigating police violence and fraud. *Id.* at ¶ K. In April 1994, he provided evidence of police misconduct to various authorities and subsequently faced more retaliation. *Id.* at ¶¶ Q, R. Also in April 1994, he provided information about police brutality and dishonesty to Assistant United States Attorney John Durham, who advised him to continue collecting evidence, but alerted law enforcement officers about Mr. Inkel's investigation. *Id.* at ¶¶ S-X. A number of Colchester officers assaulted, falsely arrested, and imprisoned Mr. Inkel in March 1994. *Id.* at ¶ Z. They stole and destroyed his evidence documenting their misconduct. *Id.* at ¶¶ AA, CC, GG. While incarcerated in May 1994, Mr. Inkel was denied medical care, denied bail, and threatened with

violence. *Id*. at ¶¶ DD-FF. Witnesses to police violence against Mr. Inkel were beaten, threatened, and falsely arrested in an effort to cover up crimes against Mr. Inkel. *Id*. at ¶¶ HH, JJ. In subsequent months, various authorities sanctioned Mr. Inkel's murder. *Id*. at ¶¶ II, KK-MM. In September 1994, Mr. Inkel traveled to Alaska for his safety. *Id*. at ¶ RR. In Alaska, he learned information related to a rape and murder, and shared that information with law enforcement. *Id*. at ¶ SS. Connecticut officials gave false information about him to Alaska officials. *Id*. In 1996, Attorney John Schoenhorn represented Mr. Inkel in a civil rights lawsuit. *Id*. at ¶¶ TT-UU. Mr. Inkel then learned that Attorney Schoenhorn was corrupt and destroyed evidence. *Id*. at ¶ VV.

In March 2013, a group of private citizens and police officers in the Town of East Haddam conspired to violate Mr. Corey's rights. *Id*. at ¶ XX. On March 9, 2013, they kidnapped, restrained, and unlawfully charged him with criminal activity. *Id*. at ¶ YY. These events arose out of a dispute regarding Mr. Corey's shared driveway with neighbors and his subsequent arrest. *See Corey v. Hawes*, 2015 WL 5472507 (D. Conn. Sept. 17, 2015). In 2014, Mr. Corey filed suit in the District of Connecticut against his neighbors, various individuals associated with the East Haddam Police Department, and the Town of East Haddam based on this dispute. *Id*.; ECF No. 24 at ¶ AAA. In the course of that litigation, Mr. Corey filed an application for prejudgment remedies against his neighbors. *Corey*, 2015 WL 5472507 at *1. In 2015, Judge Meyer referred this motion to Magistrate Judge Margolis, who held a three-day hearing and then denied the motion. *Id*. In 2016, Judge Meyer granted the defendants' summary judgment motions and closed the case. Civil Action No. 3:14cv1266(JAM), Dkt No. 168. Mr. Corey filed an appeal that was dismissed for lack of jurisdiction. *Id*. at Dkt No. 195. Some of the Plaintiffs' allegations in *this* case arise from their dissatisfaction with the decisions by Judge Meyer and Judge Margolis. They allege that the Defendants "filed false pleadings before this court, suborned perjuries,

destroyed official documents and engaged in numerous misprisons of felonies to conceal numerous unlawful governmental and organizational acts." ECF No. 24 at ¶ BBB. They further allege that there was a "counterfeit or void judgment," that they "were denied their rights to present their claims in this Court to be heard and honestly adjudicated," and that there was a "miscarriage of justice" in the earlier action brought by Mr. Corey. ECF No. 24 at ¶ CCC.

## II.    Legal Claims

The plaintiffs assert the following legal claims: (1) claims under 42 U.S.C. §§ 1983 and 1985 for violation of plaintiffs' First, Fourth, and Fourteenth Amendment Rights, ECF No. 24 at 1-2, ECF No. 1 at 4; (2) claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964, ECF No. 24 at 5; and (3) claims of common-law fraud, ECF No. 24 at ¶¶ BBB-CCC.

## III.    Motions to Dismiss

The State and Federal Defendants filed motions to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5), and (b)(6). ECF Nos. 28 & 30.[2]

### A.  Legal Standards

#### 1.  Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v.*

---

[2] Local Rule 12(a) requires any represented party moving to dismiss the complaint of a self-represented party to file and serve, as a separate document, a "Notice to Self-Represented Litigant Concerning Motion to Dismiss" along with the text of Rule 12 of the Federal Rules of Civil Procedure and Local Civil Rule 7. The State Defendants fully complied with this rule. ECF No. 29. The Federal Defendants filed and served the Notice, but did not file and serve the text of FRCP 12 or LR 7. ECF No. 30-2. The Federal Defendants' incomplete compliance with Local Rule 12(a) did not prejudice the Plaintiffs, however, because they received all the required documents from the State Defendants.

*Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

### 2. Rule 12(b)(5)

Under Rule 12(b)(5), a party may move for dismissal of a complaint based on inadequate service of process. When proof of service is challenged, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010). In deciding the issue, "a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Technical errors in a summons generally do not render service invalid," but "where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *Id*. at 65.

The plaintiff can avoid dismissal if he can demonstrate good cause for his failure to effect proper service. *Lab Crafters, Inc. v. Flow Safe, Inc.*, 233 F.R.D. 282, 284 (E.D.N.Y. 2005). "Two factors are considered to determine whether good cause exists: (1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Id*. "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to make timely service was the result of circumstances beyond his control."

*Myers v. Sec. of the Dept. of the Treas.*, 173 F.R.D. 44, 46 (E.D.N.Y. 1997) (internal quotation marks omitted).

### 3. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move for dismissal based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In reviewing a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff[s], accepting the complaint's allegations as true." *York v. Assn. of B. of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002). And when a plaintiff is *pro se*, the court "must liberally construe his pleadings, and must interpret his complaint to raise the strongest arguments it suggests." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). In addition to the complaint, the court may consider "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). In addition, "[m]atters judicially noticed by the District Court are not considered matters outside the pleadings." *Id.* (citation omitted). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but

rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (citation omitted).

Although statutes of limitations and the doctrine of res judicata are affirmative defenses, and therefore not typically considered in a motion to dismiss, they "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense[s] appear[] on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the [res judicata] defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

### B. Rule 12(b)(1): Eleventh Amendment and Sovereign Immunity

#### 1. State of Connecticut and Connecticut Officials

The Eleventh Amendment provides states and state agencies immunity from suit for monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 (1984). "Eleventh Amendment immunity, however, is not absolute." *Close v. State of N.Y.*, 125 F.3d 31, 36 (2d Cir. 1997). There are two ways a state may be subject to suit: "(1) Congress may abrogate a state's sovereign immunity through a statutory enactment, and (2) a state may waive its immunity and agree to be sued in federal court." *Id*. (internal citations omitted).

"Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). And Connecticut has not waived its sovereign immunity under Section 1983. *Wagner v. Connecticut*

*Dept. of Correction*, 599 F. Supp. 2d 229, 238 (D. Conn. 2009). Although there is limited case law regarding immunity to RICO claims, the RICO statute contains no express abrogation of Eleventh Amendment immunity, 18 U.S.C. § 1964, and courts in this circuit have held that the immunity applies to such claims. *See, e.g.*, *Jones v. King*, 10 CIV. 0897 PKC, 2011 WL 4484360, at *4 (S.D.N.Y. Sept. 28, 2011); *Molina v. State of N.Y.*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995). As such, the Eleventh Amendment protects both the State of Connecticut and Connecticut officials, acting in their official capacity, from claims for money damages brought pursuant to 42 U.S.C. § 1983 and RICO. All such claims against the State of Connecticut and all official capacity claims against state officials are therefore dismissed. In any event, if these claims were not barred by the Eleventh Amendment, they would nonetheless be dismissed for reasons discussed below.

### 2. Federal Government and President Trump

To the extent that the Plaintiffs assert § 1983 claims for damages against the Federal Government, President Trump in his official capacity, and other federal officials identified in the September 26, 2018 complaint (such as Christopher Droney and John Durham), the Court construes them as *Bivens* claims.[3] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign

---

[3] Section 1983 provides for a private right of action for violations of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any *State* or *Territory* or the *District of Columbia*." 42 U.S.C. § 1983 (emphasis added). To the extent that the federal defendants acted under color of law, it was federal and not state law. Thus, in light of the Plaintiffs' pro se status, I construe any § 1983 claims against the federal defendants as *Bivens* claims. *See Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir. 1988) (construing *pro se* Section 1983 claims against federal defendants as *Bivens* claims).

immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Here, the Plaintiffs' *Bivens* claims are premised on alleged violations of the First, Fourth, and Fourteenth Amendments. ECF No. 24 at 1-2, ECF No. 1 at 4. However, "the United States has not waived its sovereign immunity with respect to . . . constitutional torts." *Castro v. U.S.*, 34 F.3d 106, 110 (2d Cir. 1994). As such, the Plaintiffs' *Bivens* claims against the United States, President Trump, Christopher Droney, John Durham, and any other federal officials in their official capacities, are dismissed. And even if these claims were not barred by sovereign immunity, they would nonetheless be dismissed for reasons discussed below.

### C. Rule 12(b)(5): Service

The Defendants argue that the Plaintiffs did not properly serve any of the State or Federal Defendants in their individual capacity. ECF No. 28-1 at 13-14; ECF No. 30 at 14-15. I agree. Indeed, the docket contains no evidence that the Plaintiffs properly served <u>any</u> of the Defendants.

The Plaintiffs must serve a copy of the summons and complaint on each Defendant personally, at the individual's abode with someone of a suitable age and discretion who resides there, or by delivering a copy to an agent authorized to receive it. Fed. R. Civ. P. 4(e); Conn. Gen. Stat. § 52-57. Although the Court issued summons forms for "Daniel Malloy" and "Donald Trump," ECF Nos. 13 & 14, the Plaintiffs never filed proof of service with respect to them. As to the remaining defendants, except George Crouch and Patricia Williams, the docket indicates that proof of service was not filed with respect to any of them. And the proof of service forms for Patricia Williams and George Crouch, ECF Nos. 47 & 48, were untimely. They indicate that service took place on January 25, 2019, which is more than 90 days after the operative complaint was filed on September 26, 2018. Fed. R. Civ. P. 4 ("If a defendant is not served within 90 days

after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").[4]

Therefore, the Plaintiffs can avoid dismissal only if they demonstrate good cause for their failure to effect proper service. *Lab Crafters, Inc. v. Flow Safe, Inc.*, 233 F.R.D. 282, 284 (E.D.N.Y. 2005). "Two factors are considered to determine whether good cause exists: (1) the reasonableness and diligence of Plaintiff's efforts to serve, and (2) the prejudice to the Moving Defendants from the delay." *Id*. Here, the Plaintiffs were well aware of the importance of service, and have not demonstrated good cause for failure to effect proper service. At an April 11, 2018 hearing, Judge Richardson informed them about the importance of service, and the Plaintiffs stated that they were aware of the need to serve the Defendants. ECF No. 11. Further, by challenging the adequacy of service in their motions to dismiss, filed in early November 2018, the State and Federal Defendants further notified the Plaintiffs of service defects. ECF Nos. 28 & 30. Thus, the Plaintiffs have failed to show that they made reasonable, diligent efforts to effectuate service. Indeed, the Plaintiffs have so clearly failed to show good cause for the defective service that they could not avoid dismissal even if the Defendants would not be prejudiced by the delay. Thus, all claims are dismissed for insufficient service of process. In any event, even if service were proper, the Plaintiffs' claims would fail for reasons discussed below.

### D. Rule 12(b)(6)

#### 1. Statutes of Limitations

---

[4] The Plaintiffs were afforded adequate notice that service was defective by the filing of defendants' motions on November 5 and 6, 2018, respectively. ECF Nos. 28 & 30. In addition, it is unclear whether the Plaintiffs served the first amended complaint, which is the operative complaint in this case, or the second amended complaint on these Defendants.

The Plaintiffs allege that various officials and private individuals deprived them of their constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985. ECF No. 24 at 1-2, ECF No. 1 at 4. They also assert claims under RICO, 18 U.S.C. §§ 1962 and 1964. ECF No. 24 at 5 ("All private and governmental defendants are sued as violating the conspiracy to engage in racketeering activity laws, including but not limited to Title 18 United States Code section 1962."). All such claims arising from events occurring before September 26, 2014 are time-barred.

"The statute of limitation for claims brought under 42 U.S.C. § 1983 is generally the statute of limitations for the analogous claim under the law of the state where the cause of action accrued." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) (internal quotation marks omitted). In Connecticut, § 1983 actions are subject to a three-year statute of limitations, *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998), as are § 1985 claims, *Meyer v. Frank,* 550 F.2d 726, 727 (2d Cir.1977). When a claim accrues, however, is a question of federal rather than state law. *McDonough*, 898 F.3d at 265 (2d Cir. 2018). Under federal law, "an action accrues when the wrongful act or omission results in damages and once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (internal quotation marks and citations omitted). As to civil RICO claims, the Supreme Court announced a uniform four-year limitations period. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998).

The operative complaint in this case was filed on September 26, 2018, and recounts incidents that were known to the Plaintiffs at the time they occurred. ECF No. 24.[5] Indeed, as discussed below, these events were the subject of earlier lawsuits brought by the Plaintiffs. Therefore, the Court may entertain only those claims arising on or after September 26, 2015 with respect to the § 1983 claims and on or after September 26, 2014 with respect to the RICO claims.[6]

Mr. Inkel's claims against Colchester Police Officers James Nardella and Mark Gendron arise from an incident of alleged police brutality in 1993. ECF No. 24 at ¶ C. Claims against the State of Connecticut, State Police Troop K, Jenny Contois, and the Police Board Commission arise from Mr. Inkel's arrest on July 3, 1993. *Id*. at ¶¶ D-J. Claims against Melody Wolf arise from her alleged conspiracy with various governmental authorities in August 1993. *Id*. at ¶¶ M-O. Claims against the Town of Colchester, Trooper Frederick Briger, and Police Officer Charles Scott Thomas arise from the same alleged conspiracy in August 1993. *Id*. at ¶ N. Claims against Robert Balaban arise from Mr. Inkel's arrest in September 1993. *Id*. at ¶ P. Further claims against the Town of Colchester and the State of Connecticut arise from alleged retaliation, false arrest, and police brutality around April 1994. *Id*. at ¶¶ Q-R. Claims against John Durham arise

---

[5] The original complaint dated August 17, 2017 is so bare—it consists of seven pages in large handwriting setting forth a series of legal conclusions, no specific facts, and a request to enjoin Dannel Malloy and Donald Trump from taking various actions, ECF No. 1,—that I do not find that the September 26, 2018 amended complaint relates back to it. The original complaint sets forth no specific "conduct, transaction, or occurrence," and thus the September 26, 2018 amended complaint could not relate back to it even with respect to the few defendants named in both complaints. *See* Fed. R. Civ. P. 15(c)(1)(B) & (c)(1)(C). Nonetheless, even if the September 26, 2018 complaint did relate back to the August 17, 2017 filing, it would not matter: here, *all* of the plaintiffs' allegations except for those contained in ¶¶ XX-DDD of the amended complaint occurred well before August 17, 2013 and would therefore still be time-barred.

[6] The Plaintiffs do not allege any facts to suggest that they are entitled to equitable tolling or tolling under any other doctrine. In fact, most of their allegations were made in previous lawsuits, as discussed more fully below.

from a conversation in April 1994. *Id.* at ¶ S & U.[7] Further claims against Police Officers Nardella and Thomas, and claims against Police Officers Joseph Jones and Norman Seney, arise out of Mr. Inkel's arrest on May 21, 1994 and subsequent pretrial detention. *Id.* at ¶¶ Z-GG. Further claims against Police Officers Nardella, Thomas, Gendron, Briger, the Town of Colchester, the State of Connecticut, and the United States of America, and claims against Police Officer Ostrowski, Todd Vachon, and Joseph Drum, arise out of an alleged conspiracy between May 21, 1994 and July 28, 1994 to murder Mr. Inkel. *Id.* at ¶ II-MM. Further claims against Durham, and claims against Kevin Kane, James Dignotti, Steven Fields, Christopher Droney, and Ron Apter, arise from an alleged cover-up of police misconduct; although it is unclear when this alleged cover-up took place, it appears to be in the mid-1990s as it appears after the 1994 events and before the 1996 events detailed in the amended complaint. *Id.* at ¶ NN. Claims against Attorney John Schoenhorn arise from his representation of Mr. Inkel in a 1996 civil suit. *Id.* at ¶¶ TT-VV. Mr. Corey's claims against Patricia Williams and George Crouch arise from his arrest in March 2013. *Id.* at ¶¶ XX & YY.

All of the incidents just described occurred before September 26, 2014, and even before August 17, 2013 (if the date of the original complaint is used, *see supra* note 5). Therefore, the § 1983 and § 1985 claims, as well as the RICO claims, arising from these incidents are dismissed.[8]

### 2. Res Judicata

---

[7] Although Mr. Inkel notes that "Inkel would never hear from Durham again until early 2017," ECF No. 24 at ¶ S, there is no more information about what happened in 2017. Thus, there is no allegation of any claims against Durham arising from 2017.

[8] While virtually all of the factual allegations in the September 26, 2018 amended complaint describe events occurring before September 26, 2014, paragraph CCC refers to events related to the prosecution of Mr. Corey's earlier lawsuit that occurred in July 2015. As discussed below, however, any claims arising from these events are barred by res judicata.

The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (internal quotation marks and alterations omitted). Later litigation is therefore barred if an earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. U.S.*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted).

### a)  *1993 McDonalds Incident*

Although I have already determined that the claims stemming from the 1993 McDonalds incident should be dismissed for other reasons, I agree with the Federal Defendants that they are also barred by the doctrine of res judicata. ECF No. 30-1 at 8.

Mr. Inkel has brought suit against the Town of Colchester and various officers, including James Nardella, Mark Gendron, Charles Thomas, Frederick Briger, Jenny Cortois, Lawrence Slyman, Norman Seney III, Cooke, and Joseph Jones, multiple times based on the 1993 incident in McDonalds. First, in 2000, "Judge Squatrito rendered judgment in Inkel's favor against Colchester Police Officers Thomas and Nardella" on claims arising from the McDonalds incident. *Inkel v. Bush*, 2004 WL 2381747, at *5 (D. Conn. Oct. 19, 2004); *see* Civ. No. 3:96CV935(DJS). Several years later, Mr. Inkel raised the same claims in a suit before Judge Arterton, who dismissed them as time-barred. *Inkel*, 2004 WL 2381747, at *6. In 2014, he again raised the same claims, and they were again dismissed. *Inkel v. Connecticut*, 2015 WL 4067038, at *3 (D. Conn. July 2, 2015). Judgment was entered in each of the three prior cases before this

lawsuit was filed. [9] Accordingly, Mr. Inkel's claims related to the 1993 McDonalds incident are barred by res judicata.

### b) *2013 Driveway Dispute & Arrest*

The claims stemming from Mr. Corey's 2013 dispute with neighbors, and his subsequent arrest, are also barred by res judicata.

The Plaintiffs allege that in March 2013, a group of private citizens and police officers in the Town of East Haddam conspired to violate Mr. Corey's rights. ECF No. 24 at ¶ XX. Specifically, they allege that on March 9, 2013, Patricia Williams, George Crouch, Mark Creighton, and Patrick Hawes kidnapped, restrained, and unlawfully charged him with criminal activity. *Id.* at ¶ YY. However, in a previous civil action stemming from the same events, and involving the same parties, Judge Meyer granted summary judgment to Patricia Williams, George Crouch, Mark Creighton, Patrick Hawes, Mark Walters, and the Town of East Haddam. Civil Action No. 3:14cv1266(JAM), Dkt No. 168. This prior case was clearly a final judgment on the merits by a court of competent jurisdiction involving the same parties and causes of action. As such, the Plaintiffs' claims arising from the March 2013 dispute and arrest are barred by res judicata.

Moreover, Mr. Corey's claims of fraud during the adjudication of the prior case (including those dating to July 2015 set forth in paragraph CCC of the September 26, 2018 complaint) could have been addressed by filing a Rule 60(b) motion in the prior action. His

---

[9] The 2015 case dismissed Mr. Inkel's claims arising from the 1993 incident for lack of standing. The Court notes that "dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction," and "a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect." *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000). Nevertheless, the Court includes this dismissal to underscore the frequency with which Mr. Inkel has raised the same claims.

claims of fraud include allegations that the Defendants "filed false pleadings before this court, suborned perjuries, destroyed official documents and engaged in numerous misprisons of felonies to conceal numerous unlawful governmental and organizational acts." ECF No. 24 at ¶ BBB. He further alleges that there was a "counterfeit or void judgment," that they "were denied their rights to present their claims in this Court to be heard and honestly adjudicated," and that there was a "miscarriage of justice." *Id.* at ¶ CCC. Rule 60(b) provides relief from a final judgment when there is "fraud . . . misrepresentation, or misconduct by an opposing party" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3) & (b)(6). A Rule 60 motion, however, is properly addressed to the court that issued the judgment and must be filed within one year of the judgment. Fed. R. Civ. P. 60(c). Judgment was entered in the earlier case on July 19, 2016. Civ. Action No. 3:14cv1266(JAM), ECF No. 168. The deadline for filing such a motion in that case thus expired on July 19, 2017, i.e., before this lawsuit was filed. Nonetheless, because Mr. Corey could have pursued such relief in the prior action, he is barred from doing so now. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (explaining that res judicata bars a subsequent action "from asserting claims that were, *or could have been*, raised in a prior action that resulted in an adjudication on the merits") (emphasis added).

Because the federal claims have all been dismissed, to the extent that the Plaintiffs' claims regarding the adjudication of the prior case may be construed as common law fraud claims, I decline to exercise supplemental jurisdiction over them.

### E.  Injunctive and Declaratory Relief

The Plaintiffs seek injunctive relief. ECF No. 1 at 7 ("We pray that the Court award an injunction restraining both President Trump and Governor Malloy from continuing to engage in practices and patterns of allowing their persons working on their behalf from engaging in

unlawful governmental conduct which subjects the plaintiffs to deprivations of their constitutional rights."). Because I have dismissed all of their claims, they are not entitled to injunctive relief. In any event, however, they would be unable to satisfy the requirements for a permanent injunction even if their claims did not fail on the merits.

"A plaintiff seeking a permanent injunction . . . must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief." *Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 677 (S.D.N.Y. 2015) (internal quotation marks omitted). To satisfy this test, the Plaintiffs must demonstrate "(1) that [they] will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551–52 (S.D.N.Y. 2008).

The Plaintiffs are unable to satisfy the first of the four factors – irreparable harm. As set forth above, most of the factual allegations in the complaint and amended complaint describe conduct that occurred years ago. As to every allegation of illegal conduct, the Plaintiffs plead no facts that would provide a basis for believing that the Defendants might engage in such conduct in the future. For instance, although the Plaintiffs allege that several individuals "caused George Corey to be kidnapped, restrained, handcuffed behind his back, placed in great and long lasting pain, imprisoned, fraudulently, publicly and maliciously charged with offenses against the peace" in 2013, ECF No. 24 at ¶ YY, they do not allege any facts to suggest that such a kidnapping is likely to recur. The Plaintiffs cannot establish irreparable injury "where there is no showing of any real or immediate threat that the plaintiff[s] will be wronged again." *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 111 (1983). And "[w]here a plaintiff does not establish irreparable harm, the court need not address the other factors necessary for the issuance of injunctive relief." *Mrs. U.S. Natl. Pageant, Inc. v. Williams*, 353 F. Supp. 3d 213 (W.D.N.Y. 2019) (internal quotation marks omitted). As such, the Plaintiffs would not be entitled to injunctive relief even if any of their claims survived.

* * *

For the foregoing reasons, the State Defendants' Motion to Dismiss, ECF No. 28, and the Federal Defendants' Motion to Dismiss, ECF No. 30, are GRANTED.

## IV.   Motions to Strike

### A.  Second Amended Complaint

The Plaintiffs filed a second amended complaint on January 4, 2019. ECF No. 40. The State Defendants filed a motion to strike this amendment, arguing that it is identical in all material respects to the first amended complaint. ECF No. 46. I agree.

Federal Rule of Civil Procedure 12(f) permits the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." As the State Defendants note, the second amended complaint is identical to the first amended complaint, except for the caption. *Compare* ECF Nos. 24 & 40. The caption in the first amended complaint is "Inkel et al v. Connecticut et al" while the caption in the second amended complaint is "Phillip H. Inkel, et al v. Connecticut, et al, Patricia Williams, George Crouch, Meredith Inkel." ECF Nos. 24 & 40. As such, the State Defendants' motion to strike, ECF No. 46, is GRANTED.

### B.  Supplements

The plaintiffs also filed two supplements to the complaint on January 4, 2019. ECF Nos. 43 & 44. The State Defendants filed a motion to strike these supplements, arguing that the Court

should construe them as proposed amendments, and deny leave to amend pursuant to Federal Rules of Civil Procedure 15 and 16. ECF No. 45. I agree.

First, the State Defendants argue that the filings labeled "supplement" do not meet the definition of a supplemental complaint under the Federal Rules as none of the events described in the filings occurred after the first amended complaint was filed. ECF No. 45 at 3. "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event *that happened after the date of the pleading to be supplemented*." Fed. R. Civ. P 15(d) (emphasis added). As far as the Court can tell, the "supplement" filings describe allegedly false arrests and related conduct that *preceded* the filing of the operative complaint and therefore do not meet the definition of a supplemental pleading. *See* ECF No. 43. Therefore, the documents will be construed, instead, as attempts to further amend the complaint and assessed under Rule 15(a). *Sookoo v. Heath*, 2011 WL 6188729, at *2 (S.D.N.Y. Dec. 12, 2011) ("The amended petition thus exclusively references events which occurred . . . prior to the filing of the original petition. Accordingly, the present motion should be construed as a motion to amend the original habeas petition under Rule 15(a).").

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Here, Mr. Inkel did not obtain the opposing party's written consent. And "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000). Indeed, once a schedule has been entered, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Here,

the Court's order on pretrial deadlines set forth the following schedule: "amendment of the pleadings shall be filed within sixty (60) days after filing of the complaint, the filing of a petition for removal, or the transfer of an action from another District or court." ECF No. 2. The second amendment was filed more than 90 days after the first amended complaint and more than a year after the initial complaint. *See* ECF No. 1 (initial complaint filed August 17, 2017); ECF No. 24 (first amended complaint filed September 26, 2018); ECF No. 43 (second amended complaint filed January 4, 2019). Because the Plaintiffs have not provided any explanation for the delay, and the most recent conduct described in the filing occurred well before the Plaintiffs filed their *first* amended complaint, the Court is well within its discretion to deny leave to file this amendment.

In addition, the second amendment would not be permitted even if assessed under Rule 15. Under Rule 15, a motion to amend may be denied if "the proposed amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). "To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss." *Id*. at 456. Here, very few of the claims in the second amendment would withstand a motion to dismiss. First, any § 1983 claims arising from the allegations of false arrests and malicious prosecutions in 2014 and 2015 are time-barred. As shown, the original complaint dated August 17, 2017 is so vague as to prevent relation back of any subsequent pleadings, but the new incidents of false arrest and malicious prosecution from 2014 and 2015 would not even relate back to the September 26, 2018 complaint, as these claims do not arise "out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the [September 26, 2018] pleading." Fed. R. Civ. P. 15(c)(1)(B). Thus, because the second amendment was filed on January 4, 2019, most of the conduct alleged in the proposed second amendment occurred more

than three years prior to its filing and the associated claims are time-barred. *See* Section III.D.1. Second, any claims against Patricia Williams and George Crouch stemming from the same actions at issue in *Corey v. Hawes*, 2015 WL 5472507 (D. Conn. Sept. 17, 2015) are barred by the doctrine of res judicata. *See* Section III.D.2.

* * *

For the foregoing reasons, the State Defendants' Motions to Strike, ECF Nos. 45 & 46, are GRANTED.

## V.   Motion for Hearing to Determine Change of Venue

The Plaintiffs filed a motion "calling for a hearing to determine whether or not there shall be an Order to change the venue of this action to another U.S. District Court." ECF No. 39 at 1. They argue that transfer is warranted because they "have experienced overwhelming fraud, corruption, and abuse practiced in this court in this regions government with impunity and seriously doubts the ability of this Court and region's law enforcement to hear and adjudicate this case fairly." *Id*. They allege "frauds upon the courts by officers of the courts," malicious prosecutions, alteration of transcripts, and destruction of evidence. *Id*. at ¶ 5. They further allege that they have been denied equal protection of the laws at the United States District Court for the District of Connecticut, *id*. at ¶ 6, and that "dishonesty and obstructions of justice" deprive them of access to the court, *id*. at ¶ 7. They make additional allegations of judicial misconduct related to the action before Judge Meyer and Judge Margolis. *Id*. at ¶¶ 10-12.

The Plaintiffs' allegations, however, are conclusory assertions of bias. Such assertions, "[w]ithout proof of improper bias," do not justify transfer or recusal. *Clesi v. Zinc Corp. of Am.*, 2001 WL 225241, at *3 (S.D.N.Y. Mar. 6, 2001). The fact that the Plaintiffs did not achieve their desired outcome in the action before Judge Meyer and Judge Margolis does not indicate that the

District of Connecticut is biased against them. *Chen v. Chen Qualified Settle. Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("[A]dverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.").[10] In sum, neither transfer to another district nor recusal is warranted.

## VI.     "Motion for Articulation"

The plaintiffs filed a "motion for articulation" regarding the order transferring the case from Judge Bryant to Judge Shea. ECF No. 42. This motion is DENIED.

## VII.    Remaining Motions

In light of the disposition of this case, the omnibus motion, ECF No. 20, the motion for a hearing and preliminary restraining order, ECF No. 26, and the motion to appoint counsel, ECF No. 49, are DENIED AS MOOT.

## VIII.   Filing Injunction Warning

As discussed above, Mr. Inkel has filed several cases raising the same claims stemming from the same events. *See* Section III.D.2.a. Indeed, he has continued to do so despite several final judgments dismissing those claims. *Id*. Accordingly, Mr. Inkel is hereby warned that further frivolous filings may result in sanctions, including an injunction requiring him to obtain leave of the Court before filing any additional documents on the docket. *See In re Martin Trigona*, 737 F.2d 1254, 1261 (2d Cir.1984) (Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.); *see also Shafii v. British Airways*, PLC, 83 F.3d 566, 571 (2d

---

[10] Furthermore, the Court notes that Mr. Inkel actually *prevailed*, in part, on a § 1983 claim he brought in the District of Connecticut. Civil Action No. 3:96-cv-935.

Cir.1996) (stating that a district court may impose sanctions against litigants who abuse the judicial process).

**IX.     Conclusion**

For the reasons set forth above, the [ECF Nos. 28 & 30] motions to dismiss are GRANTED; the motions to strike [ECF Nos. 45 & 46] are GRANTED; the [ECF No. 20] omnibus motion is DENIED AS MOOT; the [ECF No. 26] motion for hearing and preliminary restraining order is DENIED AS MOOT; the [ECF No. 39] motion for change of venue is DENIED; the [ECF No. 42] motion for articulation is DENIED; and the [ECF No. 49] motion to appoint counsel is DENIED AS MOOT. Accordingly, the Clerk is directed to close this case.

IT IS SO ORDERED.

/s/ MICHAEL P. SHEA_____
Michael P. Shea, U.S.D.J

Dated:        Hartford, Connecticut
              March 15, 2019